# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00382-CV

---

**In the Matter of T. J. E. G.**

---

**FROM THE 277TH DISTRICT COURT OF WILLIAMSON COUNTY**
**NO. 24-0007-J277, THE HONORABLE STACEY MATHEWS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

T.J.E.G., now seventeen years old, filed this accelerated appeal from the juvenile court's order waiving jurisdiction and transferring his case to criminal court for criminal proceedings as an adult (the transfer order). *See* Tex. Fam. Code §§ 54.02(a), 56.01(h), (h-1). On appeal, T.J.E.G. contends that the juvenile court's waiver of exclusive jurisdiction and transfer of his case to adult criminal court was an abuse of discretion. We affirm.

## BACKGROUND

The State filed a petition with the juvenile court alleging that T.J.E.G. committed manslaughter by recklessly causing the death of A.B. by shooting him with a deadly weapon. The State's petition requested that the court waive its jurisdiction and transfer T.J.E.G. to an adult criminal court. The juvenile court held a transfer hearing. The State presented documentary and testimonial evidence in support of its petition for transfer through T.J.E.G.'s probation officer, Thea Barragan.

Based on a report prepared by Barragan, the State alleged that in the early hours of New Year's Day 2024, T.J.E.G. was hanging out with his friend A.B. and some girls that A.B. had invited in an Airbnb rented by T.J.E.G.'s father. While his father was in another room, T.J.E.G. began playing with and waiving around a gun that he pulled out of his waistband. According to a witness who was elsewhere but on a video call with someone in the room, the situation escalated when the witness called T.J.E.G. a "ho" over the phone and he began threatening the girls in the room with his gun and telling them to leave. A.B. told T.J.E.G. to calm down and wait for the girls to get a rideshare service. According to the girls, T.J.E.G. cocked the gun, A.B. attempted to take the gun from T.J.E.G., and the gun went off. The witness that was on the video call said she heard screaming and a gunshot, that the phone fell to the ground, and she saw A.B.'s head and blood on the screen and heard someone yell, "he shot him." T.J.E.G. told his father that A.B. had shot himself and then T.J.E.G. left the residence with the gun. Someone other than T.J.E.G. called 911.

T.J.E.G. was detained nearby by a sheriff's deputy who had been given the description of the shooter given to the 911 operator. The responding deputy noticed that T.J.E.G. had a blood droplet on his sock and bloodstains on his hands. T.J.E.G. admitted that he had a gun in his backpack and, in response to a question about whether he had shot someone, he told the deputy that the other person had shot himself. T.J.E.G.'s father told detectives that T.J.E.G. regularly had firearms that T.J.E.G. had obtained himself. A few months prior to the alleged offense, T.J.E.G.'s father had found two guns in T.J.E.G.'s possession and surrendered one to the police and put the other in a safe. But he believed that T.J.E.G. had recovered the latter gun after the safe had been left unsecured.

A.B. died at the scene. The preliminary autopsy revealed that A.B. had been shot at close range above his right eye and bullet fragments removed from A.B.'s body matched the bullets that were in the magazine of the gun that was in T.J.E.G.'s backpack when he was detained.

Video and audio recordings were admitted into evidence that included: a cell phone video of a person playing with a gun, the video recording of a police interview of T.J.E.G. in which he admitted to detectives that he was the person playing with the gun in the cell phone video, the audio of the 911 call, and surveillance video provided by the owner of the Airbnb that shows T.J.E.G leaving the residence in a white t-shirt with a large bloodstain on the bottom half of the back of it and him putting on a black hoodie over the t-shirt.

T.J.E.G.'s probation officer testified to his probation history. She testified that he had been referred to the juvenile system in 2021 for a possession of marijuana charge and in 2023 for charges of aggravated robbery, engaging in organized criminal activity, unlawful carrying of a weapon, evading arrest or detention, and two counts of aggravated assault with a deadly weapon all arising out of the same incident. T.J.E.G.'s probation report showed that he was placed on a five-year determinate sentence, probated for eight years, for the aggravated robbery, which involved T.J.E.G. and two others carjacking a rideshare driver at gunpoint.

Two of the terms of his probation required him to not violate any laws and prohibited him from having a firearm or illegal weapon in his possession or control. T.J.E.G. had participated in a county juvenile services program while on probation that included a gang intervention program, social and recreational activities, and a program called Peaceful Alternatives to Tough situations, which covered conflict resolution, anger management, and character development. T.J.E.G. had been attending online school.

3

Also admitted in evidence was a psychological examination of T.J.E.G. conducted by Doctor Stephen Thorne. Dr. Thorne determined that T.J.E.G.'s full scale IQ was 77, that he had a moderate to high score on the Structured Assessment of Violence in Youth, that he "has some sophistication and maturity" and can follow rules, but that he has an overly concrete, simplistic, and limited self-awareness in interpersonal relationships. Dr. Thorne noted that although T.J.E.G. reported never being physically or sexually abused, T.J.E.G.'s records included a history of involvement by Child Protective Services with his family as a result of allegations of neglectful supervision and physical abuse of T.J.E.G. and a sibling. Dr. Thorne stated that he had been told by T.J.E.G.'s current therapist that T.J.E.G. was motivated to change, active in treatment, receptive to relevant feedback and suggestions, and a role model for some of the other kids. Dr. Thorne opined that T.J.E.G. has the ability to successfully comply with and complete treatment services available to him in the juvenile justice system.

Dr. Thorne's report recommended keeping T.J.E.G.'s manslaughter charge in the juvenile system. His recommendation was based "in large part" on T.J.E.G.'s lack of social and psychological sophistication and maturity, his family history, his behavior during his detainment for the manslaughter charge, and Dr. Thorne's opinion that T.J.E.G. could be rehabilitated via services available in the juvenile justice system. T.J.E.G.'s probation officer testified at the hearing that she also recommended that T.J.E.G. remain in the juvenile system.

After hearing all the evidence, the juvenile court waived jurisdiction and ordered T.J.E.G. to be transferred to the adult criminal justice system. T.J.E.G. appealed.

## LEGAL STANDARD

A juvenile court may waive its exclusive jurisdiction over a child and transfer the child to district court for criminal proceedings if, (1) the child is alleged to have committed a

felony, (2) the child was at least 14 years old or 15 years old—depending on the degree of the alleged felony—at the time of the alleged offense, and (3) after a full investigation and a hearing, the juvenile court determines that probable cause exists to believe that the child committed the alleged offense "and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings."  Tex. Fam. Code § 54.02(a).  In making these determinations, the court shall consider, among other matters:

> (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;
>
> (2) the sophistication and maturity of the child;
>
> (3) the record and previous history of the child; and
>
> (4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f).  These factors are nonexclusive, and the juvenile court may base its transfer order on the strength of any combination of the subsection (f) criteria.  *In re I.N.A.*, No. 03-22-00206-CV, 2022 WL 4830785, at *2 (Tex. App.—Austin Oct. 4, 2022, no pet.) (mem. op.).  The court does not have to make specific findings of fact regarding the listed factors.  *Id.*  "The State has the burden to persuade the juvenile court by a preponderance of the evidence that the welfare of the community requires transfer of jurisdiction for criminal proceedings, either because of the seriousness of the offense alleged or the background of the child or both."  *Bell v. State*, 649 S.W.3d 867, 886 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd).  The transfer of a child from juvenile court to adult criminal court is regarded as the exception, not the rule.  *See In re J.W.W.*, 507 S.W.3d 408, 414 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

5

There are two parts to our review of the juvenile court's decision to waive jurisdiction. First, we review the specific findings of fact regarding the subsection 54.02(f) factors "under traditional standards for reviewing sufficiency of the evidence." *In re D.J.M.*, No. 03-18-00476-CV, 2019 WL 190535, at \*2 (Tex. App.—Austin Jan. 14, 2019, no pet.) (mem. op.). "Second, we review the juvenile court's ultimate waiver decision for an abuse of discretion." *In re J.R.*, No. 05-20-00920-CV, 2021 WL 777090, at \*6 (Tex. App.—Dallas Mar. 1, 2021, pet. denied) (mem. op.). A juvenile court abuses its discretion when its decision to transfer is arbitrary based on the evidence. *Id.*

When reviewing the legal sufficiency of the evidence to support a finding, we credit evidence favorable to the challenged finding and disregard contrary evidence unless a reasonable factfinder could not. *D.J.M.*, 2019 WL 190535, at \*2. When reviewing the factual sufficiency of the evidence supporting a finding, we must consider and weigh all the evidence in support of and contrary to the finding and will uphold the contested finding unless we find that the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence that it is manifestly unjust. *In re C.C.*, 930 S.W.2d 929, 933 (Tex. App.—Austin 1996, no writ).

## DISCUSSION

In its transfer order, the juvenile court "determined that there is probable cause to believe that the child before the court committed the offenses alleged and that because of the seriousness of the offenses alleged or the background of the child the welfare of the community requires criminal proceedings" and "that it is contrary to the best interest of the public to retain jurisdiction." Regarding the four factors, the juvenile court further explained on the record (1) that it found that the offense was against a person rather than property, (2) that it weighed

6

T.J.E.G.'s maturity and sophistication as a 17-year-old with the support he would have from his parents to determine his ability to navigate the adult criminal justice system; (3) that in weighing its concerns for public safety with rehabilitation considerations, it was concerned about the seriousness of T.J.E.G.'s determinate sentence for the aggravated robbery offense that he was on probation for, the alleged manslaughter offense, and his "obsession with guns"; and (4) that the juvenile system would not be able to adequately address T.J.E.G.'s needs based on the seriousness of the alleged offense and his age. After explaining its decision, the juvenile court summarized its findings: "based on the fact that [T.J.E.G. is] 17, the nature of this offense, and the fact that [he is] on this determinate sentence for an aggravated robbery . . . I am going to waive jurisdiction, transferring [him] into the adult system."

Turning to the factors in subsection 52.04(f) in order, as the juvenile court determined, the alleged offense of manslaughter is an offense against a person. *See* Tex. Fam. Code § 52.04(f)(1); Tex. Penal Code § 19.04 (listing manslaughter within portion of Penal Code entitled "Offenses Against the Person"). The allegations against T.J.E.G. are that he recklessly caused the death of his friend after the gun that T.J.E.G. brought to the party, waived around, and threatened people with, went off during a failed attempt to disarm him. The juvenile court's finding on this factor is sufficiently supported by evidence and weighs in favor of transfer. *See* Tex. Fam. Code § 52.04(f)(1) (directing courts to give greater weight in favor of transfer to offenses against persons); *In re T.C.*, No. 06-21-00075-CV, 2022 WL 398419, at *4 (Tex. App.—Texarkana Feb. 10, 2022, no pet.) (mem. op.) (weighing first factor "heavily in favor of transfer" when "offense against a person resulted in a shooting").

Regarding the second factor, "[t]he purpose of an inquiry into the mental ability and maturity of the juvenile is to determine whether he appreciates the nature and effect of his

voluntary actions and whether they were right or wrong." *In re E.D.N.*, 635 S.W.2d 798, 801 (Tex. App.—Corpus Christi–Edinburg 1982, no writ). T.J.E.G. contends that the evidence failed to show that he possessed the sophistication or maturity to support the transfer. In explaining its decision at the hearing, the juvenile court stated that it believed that defense counsel had done an "outstanding job" making the argument that T.J.E.G. was not sophisticated or mature enough to manage the adult system, but that it was balancing his sophistication and maturity with the seriousness of the offense. Notably, "not every factor need weigh in favor of transfer to the criminal district court." *Bell*, 649 S.W.3d at 886. Additionally, there was conflicting evidence presented regarding T.J.E.G.'s sophistication and maturity. Although Dr. Thorne's report stated that T.J.E.G.'s test scores placed him in the bottom percentiles for his age, Dr. Thorne also opined that T.J.E.G. would be able to adequately participate in proceedings in either the juvenile justice system or the adult criminal justice system.

The juvenile court also heard evidence related to the third factor, T.J.E.G.'s "record and previous history," that supported the juvenile court's decision. *See* Tex. Fam. Code § 54.02(f)(3). T.J.E.G. contends that although he had prior referrals for various offenses, his history and record did not support transfer. T.J.E.G. emphasizes that only one of his referrals resulted in an adjudication, that he had passed seven drug tests while on probation, that his only history of drug use was with marijuana, that he was attending school, and that he was reporting to his probation officer. However, there was also evidence presented that T.J.E.G. had a history of obtaining guns and had done so twice while on probation in violation of one of the terms of his probation. He also contends that the evidence showed that he was not the person wielding the gun in the aggravated robbery for which he was on probation. There was conflicting evidence presented regarding whether T.J.E.G. or one of the other two people involved held the

8

gun in the aggravated robbery of the rideshare driver. However, Dr. Thorne's report included an excerpt from T.J.E.G.'s probation records that stated that a gun matching the description of the one used in the robbery was found near T.J.E.G. when he was detained, and he was in possession of the rideshare driver's AirPods. Further, T.J.E.G.'s judicial confession was admitted into evidence, and in it he admitted using a firearm while committing aggravated robbery. The evidence supported a finding under subsection 54.02(f)(3) in support of the transfer order.

The juvenile court also considered the fourth factor, "the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court," *see* Tex. Fam. Code § 54.02(f)(4), and resolved this factor in favor of transfer. The court acknowledged the testimony that recommended that T.J.E.G. remain in the juvenile system to receive rehabilitation services but expressed that the fact that he was seventeen years old created doubts in the ability of the system to rehabilitate him. *See Bell*, 649 S.W.3d at 896 (explaining that age of juvenile at time of hearing is relevant when considering fourth factor because child could age out of system at age nineteen and juvenile system is only designed to assist children); *Thorn v. State*, No. 12-10-00287-CR, 2011 WL 5877021, at *4 (Tex. App.—Tyler Nov. 23, 2011, no pet.) (mem. op., not designated for publication) (noting that "[t]he juvenile court is not bound to follow the recommendations of experts"). The juvenile court also explained that it considered T.J.E.G.'s determinate sentence for the aggravated robbery offense to be very serious. *See* Tex. Penal Code §§ 12.04(a) (classifying first-degree felonies as second most serious type of felony), 29.03(b) (classifying aggravated robbery as first-degree felony offense); *cf. Bell*, 649 S.W.3d at 889 (explaining that "[a]ggravated robbery is a serious offense against a person, which weighs heavily in favor of transfer" in analyzing first factor). The juvenile court also expressed

9

concerns about what it characterized as T.J.E.G.'s obsession with guns. The evidence included a video of T.J.E.G. playing with the gun by which A.B. was shot and killed prior to the offense occurring and testimony that T.J.E.G. had a history of obtaining guns, including the two taken from him by his father, one of which is believed to be the gun involved in the manslaughter offense. The evidence was sufficient to support the juvenile court's finding that the fourth factor weighed in favor of transfer.

In sum, we overrule T.J.E.G.'s sufficiency challenges to the evidence supporting the transfer under the subsection 54.02(f) factors. On this record and in light of the sufficiency of the findings, we cannot conclude that the juvenile court's decision was arbitrary or made without reference to guiding rules. Rather, the record demonstrates that the juvenile court analyzed all four factors and balanced the weight of them against each other after careful consideration of the surrounding facts and circumstances. Accordingly, we find no abuse of discretion in the juvenile court's decision to waive jurisdiction and transfer the case to a criminal court. We overrule T.J.E.G.'s sole issue.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: January 30, 2025

10